No. 21-11159

# United States Courts of Appeals for the Fifth Circuit

DAVID SAMBRANO, individually and on behalf of
all others similarly situated, et al.,

*Plaintiffs-Appellants,*

v.

UNITED AIRLINES, INCORPORATED,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
No. 4:21-cv-01074-P

## PLAINTIFFS-APPELLANTS' OPPOSED EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL OR, ALTERNATIVELY, TO EXPEDITE APPEAL

John C. Sullivan
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
john.sullivan@the-sl-lawfirm.com

Robert C. Wiegand**
Melissa J. Swindle**
STEWART WIEGAND & OWENS PC
325 N. St. Paul Street, Suite 3750
Dallas, TX 75201
Telephone: (469) 899-9800
bob.wiegand@swolegal.com

** Application for renewal submitted

Gene C. Schaerr
  *Counsel of Record*
Mark R. Paoletta*
Brian J. Field
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

* *Pro hac vice* motion forthcoming

## CERTIFICATE OF INTERESTED PERSONS

No. 21-11159
*David Sambrano, individually and on behalf of all others
similarly situated, et al. v. United Airlines*

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| | |
|---|---|
| Plaintiffs-Appellants: | David Sambrano, Genise Kincannon, Kimberly Hamilton, Seth Turnbough, David Castillo, Debra Jennefer Thal Jones |
| Counsel for Plaintiffs-Appellants: | SCHAERR \| JAFFE LLP<br>Gene C. Schaerr (gschaerr@schaerr-jaffe.com)<br>Mark R. Paoletta (mpaoletta@schaerr-jaffe.com)<br>Brian J. Field (bfield@schaerr-jaffe.com)<br>Kenneth A. Klukowski (kklukowski@schaerr-jaffe.com)<br>Joshua J. Prince (jprince@schaerr-jaffe.com)<br>Annika M. Boone (aboone@schaerr-jaffe.com)<br><br>S\|L LAW PLLC<br>John C. Sullivan (john.sullivan@the-sl-lawfirm.com)<br><br>STEWART WIEGAND & OWENS PC<br>Robert C. Wiegand (bob.wiegand@swolegal.com)<br>Melissa J. Swindle (melissa.swindle@swolegal.com) |
| Defendant-Appellee: | United Airlines, Inc. |

Counsel for
Defendant-Appellee:

JONES DAY
Donald J. Munro (dmunro@jonesday.com)
Alexander V. Maugeri (amaugeri@jonesday.com)
Hashim M. Mooppan (hmmooppan@jonesday.com)
Jordan M. Matthews (jmatthews@jonesday.com)

KELLY HART & HALLMAN LLP
Russell D. Cawyer (Russell.cawyer@kellyhart.com)

Other interested entity:    Airline Employees 4 Health Freedom

*/s/ Gene C. Schaerr*
Gene C. Schaerr

*Counsel of Record for*
*Plaintiffs-Appellants*

# TABLE OF CONTENTS

INTRODUCTION AND NATURE OF EMERGENCY ........................................1

STATEMENT .............................................................................................5

STANDARD OF REVIEW ..........................................................................8

ARGUMENT ...............................................................................................8

      I.     The Court Should Grant an Injunction Pending Appeal ......................9

            A.     Appellants will be Irreparably Harmed Absent an Injunction. ................................................................................9

            B.     Appellants are Likely to Succeed on the Merits. ......................15

            C.     Appellants' Injuries Outweigh any Harm to United. ................22

            D.     The Public Interest Favors an Injunction. ................................22

      II.    Alternatively, the Court Should Expedite the Appeal to Avoid Further Irreparable Injury to Appellants. ...........................................23

CONCLUSION ..........................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Allied Mktg. Grp. v. CDL Mktg.*,
    878 F.2d 806 (5th Cir. 1989) ...................................................... 14, 15

*BST Holdings, LLC v. OSHA*,
    17 F.4d 604, 2021 WL 5279381 (5th Cir. 2021)........................ 3, 7, 10

*Burlington N. & Santa Fe Ry. Co.*,
    548 U.S. 53 (2006) ..........................................................................13

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) .................................................................. 18, 21

*Davis v. Dallas Area Rapid Transit*,
    383 F.3d 309 (5th Cir. 2004) ...................................................... 10, 17

*Davis v. Fort Bend Cty.*,
   765 F.3d 480 (5th Cir. 2014) ...............................................................16

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) ...........................................................9, 13

*Drew v. Liberty Mut. Ins.*,
   480 F.2d 69 (5th Cir. 1973) ...............................................................21

*EEOC v. Abercrombie & Fitch Stores*,
   575 U.S.768 (2015) ...........................................................................12

*EEOC v. Chevron*,
   570 F.3d 606 (5th Cir. 2009) ....................................................... 19, 20

*Feist v. La., Dep't of Justice*,
   730 F.3d 450 (5th Cir. 2013) ...............................................................21

*Love v. City of Dallas*,
   No. 3:96-cv-0532-R, 1997 WL 278126 (N.D. Tex. May 14, 1997) ...................16

*Moss v. Harris Cty. Constable Precinct One*,
   851 F.3d 413 (5th Cir. 2017) ...............................................................19

*Norman v. NYU Langone Health Sys.*,
   492 F. Supp. 3d 154 (S.D.N.Y. 2020) ......................................... 19, 20

*Rogers v. Int'l Marine Terminals*,
   87 F.3d 755 (5th Cir. 1996) ...............................................................16

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020) .......................................................................1, 12

*Ruggiero v. Mount Nittany Med. Ctr.*,
   736 F. App'x 35 (3d Cir. 2018).........................................................20

*Sampson v. Murray*,
   415 U.S. 61 (1974) ...........................................................................15

*Tabatchnik v. Cont'l Airlines*,
   262 F. App'x 674 (5th Cir. 2008).........................................................21

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) .......................................................................23

*Union Pac. Ry. Co. v. Botsford*,
   141 U.S. 250 (1891) ......................................................................23

*Whole Woman's Health v. Jackson*,
   13 F.4th 434 (5th Cir. 2021) ...........................................................8

**Statutes**

42 U.S.C. § 12112 .................................................................. 10, 19, 20

42 U.S.C. § 12203 ........................................................................ 10, 21

42 U.S.C. § 2000e .......................................................................... 10, 16

42 U.S.C. § 2000e-2 ...........................................................................15

**Other Authorities**

*Enforcement Guidance on Retaliation & Related Issues*, No. 915.004,
   EEOC (Aug. 25, 2016) ....................................................................18

Julie Steenhuysen, *Fauci says boosters for all key to U.S. reaching
   COVID-19 endemic level*, REUTERS (Nov. 16, 2021),
   https://tinyurl.com/2p84fbcw ...........................................................6

**Rules**

Fed. R. App. P. 8 ..................................................................................8

**Regulations**

29 C.F.R. § 1630.2 ..............................................................................19

## INTRODUCTION AND NATURE OF EMERGENCY

"[E]ven in a pandemic," religious liberty "cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020). United Airlines disagrees. After instituting a COVID-19 vaccine mandate, United's CEO Scott Kirby publicly threatened employees "to be very careful about" requesting an accommodation. Hamilton Aff. ¶¶ 4, 15 (App.332-34).[1] As the district court noted, his "skepticism and apparent disdain for any religiously-motivated exemption requests" were illustrated by his warning that "very few" accommodations would be granted and that employees who even requested an accommodation were "putting [their] job[s] on the line[.]" Nov. 8 Order at 15 (App.266). United made good on Kirby's promise. For those requests it could not deny for technical and improper reasons, United issued a blanket unreasonable accommodation of unpaid leave until the end of the pandemic—effectively termination.

In ruling on Appellants' motion for preliminary injunction, the district court recognized that "Plaintiffs' arguments appear compelling and convincing" and that United's fabricated reasons for not providing reasonable accommodations evidenced pretext. *Id.* at 13, 15 (App.264, 266). Yet the district court ruled that Appellants' injuries did not constitute irreparable harm of the sort that would warrant a preliminary injunction—despite United's continuing to exert leverage over its

---

[1] App. refers to the Appendix filed with this motion.

employees to compel them to forsake their beliefs on pain of losing their livelihoods. The district court's error with respect to irreparable harm is plain: Decisions from this Court and the Supreme Court make clear that being put to such a choice constitutes irreparable harm, and they allow for a preliminary injunction—and an injunction pending appeal—to prevent such irreparable harm.

Indeed, forcing employees to choose between their faith and health on the one hand and their livelihoods on the other presents an impossible choice foreclosed by Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). And for employees who acquiesce to United's coercion and receive the COVID-19 vaccine against their beliefs or health, that decision is irreversible, and no remedy can compensate for it later.

But that is United's goal—force employees to violate their faith and health to boost the company's bottom line. There is no other explanation for United's continuing to enforce a policy that—as the district court recognized—is pretextual, calloused, and disturbing. For United, advertising a 100% vaccinated workforce is evidently more important than its employees' religious beliefs or health.

While the district court declined to acknowledge this harm as irreparable, it invited this Court's guidance. Nov. 19 Order at 3-4 (App.295-96). Moreover, this Court recently addressed the same irreparable harm accompanying a vaccine mandate that puts employees to the same choice between "their job(s) and their

jab(s)." *BST Holdings, LLC v. OSHA*, 17 F.4d 604, 2021 WL 5279381, *8 (5th Cir. 2021). *BST* teaches that harm to individuals resulting from an employer's refusal to grant a reasonable religious exemption to a vaccine mandate infringes on principles that are "not reducible to dollars and cents," and thus implicates more than just money damages. *Id.* at *20. Whether under the First Amendment or Title VII— which was designed to protect the same freedoms in the private workplace— impinging the freedom of religion in this way causes irreparable harm. *Id.* at *8. That harm is the same whether it results from an employer's violation of the Constitution or a statute.

But that is not all. Appellants demonstrated numerous other irreparable harms: the inability to pay for necessary medical treatments, imminent homelessness, and permanently lost job opportunities for which money damages are no remedy. The district court's only response to these harms was backpay and retroactive seniority. Nov. 8 Order at 6-13 (App.257-64). But that is no answer. While Appellants do not doubt that a court can award backpay, money damages cannot reverse the permanent health consequences of lost medical treatment, remedy extended homelessness, or reimburse an employee for unquantifiable lost job opportunities. Most importantly, backpay can never remedy the harm caused by forcing an employee to an unlawful choice between their faith or health and their livelihood. Ultimately, it is no answer to tell someone living paycheck to paycheck,

and faced with putting food on the table during the holidays, that they should hold out on violating their conscience or their health because United may be forced to pay them money later.  Religious and medical rights—whether under the Constitution or statutes such as Title VII—were never meant to be reserved for the rich.

Since the district court's denial of an injunction, nearly a thousand United pilots and flight attendants have been placed on unpaid leave because of their religious beliefs or health, and they will receive their last paychecks in mid-December.  Similarly, hundreds of gate and ticket agents—whom United temporarily "accommodated" with other positions and limited hours—will be placed on unpaid leave imminently.  This coercion is causing scores of employees to acquiesce to United's demands.  An injunction pending appeal is necessary to prevent further irreparable injury and to preserve the Court's ability to provide meaningful relief later.

In light of the significant harms facing Appellants and other United employees daily, Appellants request that the Court resolve this motion and either enter an injunction pending appeal or, alternatively, resolve the merits of Plaintiffs' appeal before December 15, 2021—the date on which many employees will be placed on unpaid leave or will receive their final pay check.

## STATEMENT

When United announced that all employees must receive a COVID-19 vaccine, it stated it would comply with Title VII and the ADA by permitting employees to request religious or medical accommodations. Hamilton Aff. ¶ 4 (App.331). Yet United never intended to comply with those laws. Rather, as the district court noted, United's CEO Scott Kirby publicly threatened United employees "to be very careful about" requesting such accommodations, as doing so would "put[] job[s] on the line[.]" *Id.* ¶ 15 (App.333).

Unsurprisingly, the "interactive process" for those requesting accommodations consisted primarily of United's improperly challenging employees' religious beliefs. Kincannon Aff. ¶ 7 (App.349). United then refused to provide any reasonable accommodations—offering only indefinite unpaid leave. Sambrano Aff. ¶ 12 (App.328). For pilots and flight attendants, that indefinite period of unpaid leave has already begun and they will receive their last paycheck on December 15, 2021. For several other categories of employees, United provided temporary accommodations that will likewise expire in mid-December. 2d Suppl. Jonas Aff. ¶ 8 (App.359). Those employees will then also be placed on unpaid leave until the end of the COVID-19 pandemic, *id.*, which Government officials have

stated is likely to become an "endemic," rather than ending.[2]  United did reverse course with respect to some employees, allowing them to work under strict conditions: wearing respirators; maintaining social distance; and undergoing periodic COVID-19 testing.  Tr. 179:14-25 (App.443).  While United has not provided evidence that this temporary accommodation will last, it confirms that United can provide accommodations beyond unpaid leave.

To protect Appellants and others similarly situated, Appellants sought a temporary restraining order ("TRO").  App.051.  Shortly before the TRO hearing, the parties reached an agreement that temporarily delayed United's plan to place "accommodated" employees on unpaid leave.  Min. Order (Sept. 24, 2021) (App.011).

On the eve of the subsequent preliminary injunction hearing, United filed a motion to dismiss for lack of subject matter jurisdiction.  App.183.  After postponing the hearing for briefing on the motion to dismiss, the district court entered a TRO because United's policy could "compel[] [employees] to take a vaccination in violation of their religious beliefs or medical restrictions."  Oct. 12 Order (App.198-99).

---

[2] Julie Steenhuysen, *Fauci says boosters for all key to U.S. reaching COVID-19 endemic level*, REUTERS (Nov. 16, 2021), https://tinyurl.com/2p84fbcw.

After an evidentiary hearing, the district court denied the motion for a preliminary injunction, holding that Appellants' claimed injuries did not meet the court's understanding of the legal requirements for irreparable injury. Nov. 8 Order at 6-13 (App.257-64). In the main, the district court concluded that it could remedy Appellants' harms through monetary relief or retroactive seniority.[3] *Id.*

Thereafter, Appellants filed a motion for reconsideration on the preliminary injunction, showing that the district court had overlooked a key irreparable harm— the lost ability while on unpaid leave to bid for specific job opportunities that cannot be retroactively reinstated because they will have been given to other employees in the interim. App.267-73. The district court denied Appellants' motion for reconsideration, Nov. 19 Order (App.293), and Appellants filed a notice of appeal, App.297-98. Additionally, Appellants filed a motion for an injunction pending appeal with the district court, App.300-24, which the district court denied on November 23, 2021, concluding that Plaintiffs failed to "establish … a substantial threat of irreparable injury[,]" Nov. 23 Order (App.325-26).

During briefing on the motion for reconsideration, this Court held—in a case involving a federal vaccine mandate—that being put to a choice between one's job and one's faith is *ipso facto* "irreparable injury." *BST*, 2021 WL 5279381, at *8.

---

[3] The district court largely denied United's motion to dismiss, but granted it with respect to the claims brough by Seth Turnbough. Nov. 8 MTD Order at 2 (App.239).

Appellants presented this decision to the district court, App.290, which nevertheless adhered to its prior decision, App.293-96.

## STANDARD OF REVIEW

Appellants may obtain an injunction pending appeal pursuant to Federal Rule of Appellate Procedure 8(a)(2)(A)(i) by showing: (1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in favor of an injunction; and (4) that the public interest favors such relief. *Whole Woman's Health v. Jackson*, 13 F.4th 434, 441 (5th Cir. 2021).

## ARGUMENT

Appellants satisfy all the requirements for an injunction pending appeal. *First*, as the district court appeared to recognize, United has violated Title VII and the ADA by offering only unreasonable accommodations to its employees with religious or medical reasons for not receiving a COVID-19 vaccine. The unreasonableness of indefinite unpaid leave is made clear by the many other effective accommodations Appellants identified—*e.g.*, mask wearing coupled with periodic testing, daily symptom screening, or antibody testing, all at employee expense.

*Second*, especially in light of this Court's analysis in *BST*, it is clear that Appellants and similarly situated class members will suffer irreparable harms absent injunctive relief. Granting an injunction to allow Appellants to continue working—

with mitigation measures—will ensure that these irreparable harms do not continue and that the Court can provide meaningful relief later.

*Third,* because United would suffer no cost, the balance of harms clearly favors Appellants.  And *fourth,* the public certainly has an interest in ensuring employees are able to make decisions based on their religious beliefs and in the best interest of their health.

Alternatively, to minimize their irreparable injury, Appellants request that the Court resolve this appeal in an expedited fashion.

## I.    The Court Should Grant an Injunction Pending Appeal.

### A.    Appellants will be Irreparably Harmed Absent an Injunction.

A harm is irreparable only "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quotation marks omitted).  Appellants face many harms that cannot be remedied through money damages.

1.    Most significantly, Appellants are harmed by the impossible choice United is forcing upon employees who requested an accommodation.  United's draconian "accommodation" seeks to compel employees to forsake their beliefs and health.  Indeed, United appears to have done so because Mr. Kirby wants to boast that United is the only airline with a 100% vaccinated workforce.  As Appellants have already demonstrated, the threat of a lengthy period without income has caused

many employees to forsake their beliefs and health. Lockwood Aff. ¶ 6 (App.352). And yet, as this Court recently explained, forcing an improper choice between "job(s) and ... jab(s)" constitutes an irreparable injury. *BST*, 2021 WL 5279381, at *8.

The district court resisted this conclusion, relying on two misguided assumptions. First, the court confused an employer's general ability to require vaccination with the situation here, where United is blatantly violating federal law by forcing employees to choose between "a job and a jab." To be sure, no law *generally* prohibits an employer from imposing a vaccine mandate. But, absent undue hardship (which United has not seriously alleged or shown), Title VII and the ADA prohibit an employer from coercing employees to violate their faith or health. 42 U.S.C. § 2000e(j); *id.* § 12112(b)(5)(A). And that is why those statutes also prohibit employers from punishing employees because of religious or medical needs for accommodation. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); 42 U.S.C. § 12203.

By contrast, under the district court's logic, employees always have a choice whether to assert their religious beliefs or submit to the employer's will, *see* Nov. 8 Order at 7-8 (App.258-59), and the employer is immunized from a claim of irreparable injury because employees can always "decide" to violate their beliefs. Were that correct, little would be left of Title VII or the ADA. But that is wrong,

10

and United must be held responsible for the harms that are directly and predictably caused by its false accommodation. Here, that harm is irreparable because United is forcing employees to violate their faith and health to receive a vaccine—the effects of which cannot be reversed or compensated later. Especially with respect to religious exemptions, as this Court recognized in *BST*, there simply is no way to compensate someone for the forced violation of religious freedoms.

Second, the district court concluded that "[i]t is undisputed that United exempted Plaintiffs from the vaccine mandate." *Id.* at 7 (App.258). But that conclusion conflicts with the district court's recognition elsewhere in its opinion that United's "accommodation" of indefinite unpaid leave is the functional equivalent of termination. *Id.* at 14 (App.265) (noting the "trifling pittance of indefinite unpaid leave"). On these facts, to say that United is "not [denying employees] the freedom to exercise their religious beliefs" blinks reality. *Id.* While the district court may believe it can remedy lost wages later, in the interim those with financial limitations will be forced to abandon their religious beliefs to put food on the table. And backpay cannot remedy that harm: As *BST* explained, simply being subjected to the choice between a "jab" and one's "job" constitutes irreparable injury. 2021 WL 5279381, *8.[4]

---

[4] The district court resisted this conclusion because there is no federal statute or regulation mandating the vaccine here as there was in *BST*. Nov. 19 Order at 3 n.1 (App.295). But the source of the vaccine mandate is irrelevant—harm is harm, no

The district court's errors in rejecting the irreparable nature of this harm is confirmed by the fact that Title VII has its roots in the First Amendment, prohibiting private employers from engaging in religious discrimination in the same way the government was already prohibited. *See EEOC v. Abercrombie & Fitch Stores*, 575 U.S.768, 774-75 (2015) (holding that Title VII protects an employee's "religious practice" and "religious belief" and that Title VII gives those beliefs and practices "favored treatment"). It is inconsequential whether Appellants asserted a separate First Amendment violation—the loss of "First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." *Roman Cath. Diocese*, 141 S. Ct. at 67. And again, the harm is the same whether the defendant is violating the First Amendment or a federal statute.

Ultimately, there is no way to remedy these injuries. A vaccine cannot be undone and there is no remedy for the impossible choice United is forcing on its employees. Accordingly, Appellants have shown irreparable harm and are entitled to an injunction.

2.    Appellants also demonstrated many other irreparable harms. These begin with the loss of income and medical insurance. While United may be able to compensate employees for lost wages, that will not remedy injuries that *directly*

---

matter the source. It is likewise of no moment that *BST* addressed constitutional claims. The *BST* petitioners did not limit their irreparable harm arguments to constitutional claims; neither was the *BST* rationale limited to constitutional claims.

*result* from lost salary. For instance, indefinite unpaid leave will have devastating impacts on Appellants' health or a family member's health. Hamilton Aff. ¶¶ 11-14 (App.332-33); Jonas Aff. ¶ 11 (App.345). For others, indefinite unpaid leave will force them into homelessness. Castillo Aff. ¶ 13 (App.341).

Here again, these harms cannot be remedied later. Serious physical and psychological consequences of impending homelessness, loss of life-saving medical treatment, and changes in education decisions due to lost income cannot be remedied through money damages. *Dennis Melancon*, 703 F.3d at 279. Unsurprisingly, the Supreme Court has found that—despite the availability of backpay later—a court may nonetheless issue an injunction to prevent the harms associated with lost income during a suspension. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 72 (2006).

Additionally, Appellants will be irreparably harmed by the loss of their seniority positions. As Appellants demonstrated, seniority is everything in an airline. Bates Decl. ¶ 57 (App.414). Although the district court stated that it can remedy this harm later by retroactively placing Appellants back in their seniority positions, *see* Nov. 8 Order at 9 (App.260), the only *evidence* in the record shows that this cannot be accomplished, *see* Tr. at 177:19-22 (App.442) (testimony that United could not return Appellants to their seniority positions). This would only result in an avalanche of lawsuits and grievances, and United's purported stipulation on this question cannot overcome actual record testimony.

Further, Appellants face a *separate* and unique irreparable injury related to seniority—lost bidding opportunities. This harm cannot be remedied by retroactive seniority or any other remedy the Court could fashion. As Ms. Hamilton explained, placement on unpaid leave "affects your position for bidding your normal work line, your position for bidding your vacation time, your personal holidays ... where you are in line if layoffs occur[,] ... flight benefits[,] [and] every single thing you do every day[.]" Tr. at 46:19-47:1 (App.438-39). Those missed opportunities are lost forever—they cannot be replaced with money. *Id.* at 28:1-4 (App.437); *see also id.* at 68:3-8, 70:4-13 (App.440-41). In these circumstances, a "finding of irreparable harm is appropriate even where economic rights are involved" because "the nature of those rights makes establishment of the dollar value of the loss especially difficult or speculative." *Allied Mktg. Grp. v. CDL Mktg.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989) (cleaned up).

On this issue, the district court erred in focusing on its presumed ability to place Appellants retroactively in their seniority positions. Nov. 8 Order at 9 (App.260). Even if placed back into their exact seniority positions, neither the district court nor United has explained what remedy is available for the permanent harms caused by lost schedules, jobs, and other benefits. Supp. Kincannon Aff. ¶¶ 2-5 (App.363-64). And there is none.

In denying Appellants' motion for reconsideration, the district court merely pointed to its contention that it can retroactively place Appellants into their seniority positions.    Nov. 19 Order at 1-2 (App.293-94).    But that is no answer for opportunities lost in the meantime, which cannot be quantified or restored.  *Allied Mktg.*, 878 F.2d at 810 n.1.

In short, the Supreme Court has "recognize[d] that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  As shown above, this is just such a case.  Appellants have demonstrated that they are suffering irreparable injuries.

## B.    Appellants are Likely to Succeed on the Merits.

As the district court recognized, Appellants are also likely to succeed in establishing violations of Title VII and the ADA.

1.    Title VII prohibits an employer from discriminating against an employee "because of such individual's ... religion."  42 U.S.C. § 2000e-2(a)(1). Under Title VII, Appellants "must first establish a *prima facie* case of religious discrimination" by showing: (1) that they have *bona fide* religious beliefs that conflict with an employment requirement; (2) about which they informed United; and (3) that they suffered an adverse employment action.  *Davis v. Fort Bend Cty.*,

765 F.3d 480, 485 (5th Cir. 2014).  For this inquiry, "whether the belief is a true religious tenet is not open to question." *Id.* (cleaned up).

By purporting to grant religious accommodation requests, United has determined that Appellants hold religious beliefs that merit accommodation. Sambrano Aff. ¶ 12 (App.328).  Moreover, Appellants who requested a religious accommodation hold sincere religious beliefs that conflict with receiving the COVID-19 vaccine.  Sambrano Aff. ¶ 5 (App.327); Hamilton Aff. ¶ 7 (App.331-32).

Appellants have also suffered adverse employment actions.  Indefinite unpaid leave "differs very little from termination." *Love v. City of Dallas*, No. 3:96-cv-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997).  Just because an employee is "not completely severed" from employment "does not mean that cutting off [his] paycheck was not an adverse employment action." *Id.*; Nov. 8 Order at 14 (App.265) (noting the "trifling pittance of indefinite unpaid leave").  Appellants are likely to satisfy the "adverse employment action" requirement.

The burden then shifts to United to demonstrate that it cannot reasonably accommodate Appellants' needs without undue hardship.  42 U.S.C. § 2000e(j). United cannot sustain that burden.  A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Rogers v. Int'l Marine Terminals*, 87 F.3d 755, 759–60 (5th Cir. 1996).  There is no dispute

that Appellants can perform the essential functions of their jobs with or without an accommodation.

Moreover, Appellants identified a host of alternative accommodations, such as periodic COVID-19 testing, symptom screening, and antibody testing—all at the employee's expense.   Bhattacharya Decl. ¶¶ 42-50 (App.385-88).   And expert testimony showed that United could implement these accommodations with little to no cost  Bates Decl. ¶¶ 41–49 (App.408-12).   Further, as United has subsequently permitted certain employees to continue working temporarily with similar mitigation measures in place, United clearly can implement reasonable accommodations, but has failed to do so.

As the district court noted, United's justifications are pretextual.  Nov. 8 Order at 15 (App.266).   And United's discussion of "safety" is hypocritical given that United: does not require its passengers to be vaccinated; does not require United employees from other countries to be vaccinated, despite those employees working with United crews in the United States; and allows unvaccinated pilots from other airlines to ride in the "jumpseat" of the aircraft (in the cockpit).  *Id.*  United has thus clearly violated Title VII by failing to provide reasonable accommodations.

United similarly violated Title VII by retaliating against Appellants for engaging in protected activity.  *Davis*, 383 F.3d at 319.   "[P]ersons requesting religious accommodation under Title VII are protected against retaliation for making

such requests." *Enforcement Guidance on Retaliation & Related Issues*, No. 915.004, EEOC (Aug. 25, 2016). United responded to each request with the adverse employment action of termination—either formally or effectively.

The record also shows that Appellants' protected activity caused the adverse action. Indeed, United's well-documented "apathy, if not antipathy," Nov. 8 Order at 15 (App.266), toward employees with religious beliefs shows that United threatened indefinite leave *because* of those beliefs. Indeed, that is why the district court said United's claims "may be viewed as merely pretextual." *Id.*

Further, temporal proximity shows a causal connection. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). And any suggestion that United's indefinite unpaid leave decision was legitimate and nonretaliatory is undercut by the obvious disdain United has shown for its employees with religious-based objections to receiving the vaccine. Hamilton Aff. ¶ 15 (App.333). Accordingly, Appellants are also likely to succeed on their Title VII retaliation claim.

2.    United is violating the ADA in similar ways. United failed to engage in any interactive process or provide reasonable medical accommodations. And United retaliated against Appellants for seeking medical accommodations.

Under the ADA, an employer discriminates against an employee by failing to make "reasonable accommodations to the known physical or mental limitations of

an otherwise qualified individual with a disability ... unless ... the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Here, Appellants must show that: (1) they are qualified individuals with a disability; (2) the disability and its limitations were known by the employer; and (3) the employer failed to make reasonable accommodations for such limitations. *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

The ADA protects anyone "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds[.]" *EEOC v. Chevron*, 570 F.3d 606, 614 (5th Cir. 2009). This is to "be construed broadly[,]" 29 C.F.R. § 1630.2(j)(1)(i), and includes impairments that are "episodic or in remission[,]" like "multiple sclerosis[.]" *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 165 (S.D.N.Y. 2020) (citing 29 C.F.R. § 1630.2(j)(1)(vii)). Further, "disability" can "[d]oubtless" include certain "reactions to vaccines severe enough ... to rise to the level of a disability under the ADA." *Id.*

Several Appellants suffer from *bona fide* disabilities. Because of his multiple sclerosis, Mr. Turnbough's neurologist recommended against receiving the COVID-19 vaccine as it "might precipitate a 'cytokine storm'—a condition wherein an individual's immune system is over-stimulated and begins attacking healthy tissue and organs." Turnbough Aff. ¶ 6 (App.337). Additionally, Ms. Jonas suffers

from extreme allergies and receiving the vaccine risks a serious allergic reaction. Supp. Jonas Aff. ¶ 4 (App.355). Both Turnbough and Jonas satisfy the threshold requirement as they live with daily impairments from illnesses that are episodic or in remission. *Norman*, 492 F. Supp. 3d at 164-65; *see also Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 40-41 (3d Cir. 2018) (noting that, at the "early pleading stage," a plaintiff is "not required ... to go into particulars about the life activity affected by her alleged disability").

For the third prong, the ADA requires United to engage in an interactive process—a "meaningful dialogue." *Chevron*, 570 F.3d at 621. Yet United announced its one-size-fits-all accommodation without any attempt to identify the most reasonable accommodation for any specific requester.

Additionally, any accommodation under the ADA must be reasonable. 42 U.S.C. § 12112(b)(5)(A). Yet indefinite unpaid leave cannot be a reasonable accommodation and United cannot show any burden sufficient to justify its unreasonable accommodation. Under the ADA, "the term 'undue hardship' means an action requiring significant difficulty or expense." *Id*. § 12111(10)(A). United cannot identify any "significant difficulty or expense" associated with allowing accommodated employees to continue working with mitigation measures in place like mask wearing and periodic testing. Given the availability of alternatives, United

cannot explain why indefinite unpaid leave is the *only* available accommodation—particularly where Appellants offered to pay for all testing.

Appellants are also likely to succeed on their ADA retaliation claims. The ADA makes it unlawful to retaliate against employees seeking an accommodation. 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed similarly to cases under Title VII. *Feist v. La., Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013). Requesting a "reasonable accommodation under the ADA may constitute ... protected activity." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). There can be no dispute that United responded with adverse employment actions—threatening employees with effective termination.

Finally, Appellants' accommodation requests were the cause of United's adverse employment actions. The adverse actions were close in time to the protected activity, *see Breeden*, 532 U.S. at 273, and Mr. Kirby's threats evidence retaliatory motivations behind the "trifling pittance of indefinite unpaid leave," Nov. 8 Order at 14 (App.265). Thus, Appellants' ADA retaliation claims are likely to succeed.

3.    While individuals asserting claims under Title VII or the ADA must complete the EEOC's administrative process before seeking "final relief" through a civil action, injunctive relief is available where "irreparable injury is shown and likelihood of ultimate success has been established[.]" *Drew v. Liberty Mut. Ins.*, 480 F.2d 69, 71, 72 (5th Cir. 1973). In such cases, an "individual employee may

bring her own suit to maintain the status quo pending the action of the [EEOC] on the basic charge of discrimination." *Id.* at 72; *see also id.* at 74 (relief is necessary "to preserve the court's ability to later order meaningful relief."). Appellants have satisfied *Drew*'s requirements.

### C.    Appellants' Injuries Outweigh any Harm to United.

Moreover, Appellants' injuries are not only serious and irreparable, as noted, they also far outweigh any hypothetical harm an injunction may cause United. As demonstrated, there were several alternative accommodations available that would impose little to no cost on United. Those minimal (or even zero) costs to United cannot approach Appellants' serious harms.

While United argues that it is harmed by safety concerns over COVID-19, this argument is belied by United's own conduct. *See supra* at 17. As the district court noted, United's actions apparently "may not have been motivated by safety concerns" at all. Nov. 8 Order at 15 (App.266). In short, there is no safety justification that can support a blanket policy that fails to account for individual situations. Perhaps that is why federal law requires United to engage in an interactive process in the first place.

### D.    The Public Interest Favors an Injunction.

An injunction pending appeal will also serve the public interest by ensuring that Title VII and the ADA are followed. Moreover, recognizing religious freedom's

centrality to the public interest, the Supreme Court has protected religious exercise even when faced with competing public health considerations. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296-98 (2021) (per curiam) (collecting cases and granting a preliminary injunction against COVID-19 public health order restricting religious exercise). The public interest also favors allowing individuals to make medical choices—in consultation with their doctors—to protect their health. *Union Pac. Ry. Co. v. Botsford,* 141 U.S. 250, 251 (1891).

## II.  Alternatively, the Court Should Expedite the Appeal to Avoid Further Irreparable Injury to Appellants.

Alternatively, the Court could resolve Plaintiffs' appeal of the preliminary injunction decision on an expedited basis. The Court may even proceed directly to the merits of the appeal and conclude, based on the present record, that the district court erred in denying the motion for a preliminary injunction.

Appellants believe the Parties' briefing on this motion will provide a sufficient basis to resolve the merits of this appeal now. Should the Court conclude otherwise, Appellants request an expedited briefing schedule.

## CONCLUSION

United employees are submitting to United's tactics daily—forsaking their beliefs and health in order to provide for their families. While the Court cannot remedy the irreparable violations of conscience and health that United has already caused, it can stop United from harming more employees, all of whom are members

of the putative class represented by the named Appellants. An injunction pending appeal will allow this Court to adjudicate the validity of the district court's preliminary-injunction decision while also preserving the ability to provide meaningful relief later.

December 1, 2021

Respectfully submitted,

John C. Sullivan
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
john.sullivan@the-sl-lawfirm.com

Robert C. Wiegand**
Melissa J. Swindle**
STEWART WIEGAND & OWENS PC
325 N. St. Paul Street, Suite 3750
Dallas, TX 75201
Telephone: (469) 899-9800
bob.wiegand@swolegal.com

** Application for renewal submitted

*/s/ Gene C. Schaerr*
Gene C. Schaerr
  *Counsel of Record*
Mark R. Paoletta*
Brian J. Field
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

* *Pro hac vice* motion forthcoming

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on December 1, 2021, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Gene C. Schaerr*
Gene C. Schaerr

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 1, 2021, Brian Field, counsel for Appellants, conferred by e-mail with Donald Munro and Hashim Mooppan, counsel for United Airlines, about the foregoing motion.  United Airlines opposes the relief requested in this motion.

*/s/ Gene C. Schaerr*
Gene C. Schaerr

## CERTIFICATE OF COMPLIANCE WITH RULE 27.3

I certify the following in compliance with Fifth Circuit Rule 27.3:

- Before filing this motion, counsel for Appellants contacted the clerk's office and opposing counsel to advise them of Appellants' intent to file this motion.

- The facts stated herein supporting emergency consideration of this motion are true and complete.

- The Court's review of this motion is requested by December 15, 2021.

- True and correct copies of relevant orders and other documents are attached in the Appendix to this motion.

- This motion is being served at the same time it is being filed.

*/s/ Gene C. Schaerr*
Gene C. Schaerr


## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,193 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Additionally, I certify that (1) any required redactions have been made in compliance with 5th Cir. R. 25.2.13; and (2) the document has been scanned with the most recent version of Microsoft Defender virus detector and is free of viruses.

*/s/ Gene C. Schaerr*
Gene C. Schaerr

Dated: December 1, 2021